UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. PATTON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>F.N.P. LOADHOLT, et al.,<br><br>　　　　　Defendants. | No.  2: 19-cv-0451 KJM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss the claims against defendant DiTomas raised in the fifth amended complaint.  (ECF No. 122.)  For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

<u>Legal Standard for 12(b)(6) Motion</u>

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

1  (citing Twombly, 550 U.S. at 556).  The plausibility standard is not akin to a "probability

2  requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully.

3  Iqbal, 556 U.S. at 678.

4      Dismissal under Rule 12(b)(6) may be based on either:  (1) lack of a cognizable legal

5  theory, or (2) insufficient facts under a cognizable legal theory.  Chubb Custom Ins. Co. v. Space

6  Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013).

7      In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

8  consider only allegations contained in the pleadings, exhibits attached to the complaint, and

9  matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

10  F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  When ruling on a motion to

11  dismiss, courts accept all factual allegations in the complaint as true and construe the pleadings in

12  the light most favorable to the nonmoving party.  Id. at 901 (citing Knievel v. ESPN, 393 F.3d

13  1068, 1072 (9th Cir. 2005)).

14  Background

15      On September 30, 2021, the Honorable Kimberly J. Mueller granted plaintiff's motion to

16  file a third amended complaint.  (ECF No. 101.)  On October 1, 2021, Judge Mueller appointed

17  counsel to draft and file an amended complaint on plaintiff's behalf.  (ECF No. 102.)

18      This action proceeds on the fifth amended complaint, filed February 10, 2022, prepared by

19  court-appointed counsel on plaintiff's behalf.  (ECF No. 106.)  Defendants Dhillon, Haile, Rading

20  and Aguilera answered the fifth amended complaint.  (ECF No. 108.)

21      In the fifth amended complaint, plaintiff alleges that he suffers from hepatitis C and

22  hepatitis B.  (ECF No. 106 at 1.)  Plaintiff alleges that it is well-established that hepatitis C and

23  hepatitis B co-infection causes accelerated fibrosis and leads to higher incidence of liver cancer

24  and manifests itself in rapid progression of liver scarring.  (Id. at 5.)  Plaintiff alleges that patients

25  with co-infection of hepatitis C and hepatitis B have been categorized as higher priority for

26  treatment.  (Id.)

27      Plaintiff alleges that from 2006 to 2018, despite his health being monitored, his health

28  went from mild liver scarring to severe liver damage otherwise referred to as cirrhosis.  (Id. at 1-

2.) Plaintiff alleges that he repeatedly requested treatment but defendants denied his requests because it was too expensive. (Id. at 2.) Plaintiff alleges that he suffered irreversible damage to his liver as a result of defendants' failure to provide treatment. (Id.)

Plaintiff alleges that the medical care of inmates is managed by the Division of Health Care Services ("DHCS") together with California Correctional Health Care Services ("CCHCS"). (Id. at 6.) Plaintiff alleges that CCHCS guidelines expressly state that they are not intended to be a substitute for professional judgment of physicians when making treatment decisions. (Id.) Plaintiff alleges that the CCHCS Care Guide: Hepatitis C, March 2012, later updated on October 2, 2012, included the following caveat:

> Clinicians are encouraged to use the Care Guide to assist in the medical evaluation of HCV infected patients to determine the status of their liver disease and their eligibility for treatment.

(Id.)

Plaintiff alleges that a similar statement, with even more emphasis on independence of judgment is included in the CCHCS Care Guide: End Liver Disease: January 2012:

> The information contained in the guidelines is not a substitute for a health care professional's clinical judgment. Evaluation and treatment should be tailored to the individual patient and the clinical circumstances. Furthermore, using this information will not guarantee a specific outcome.

(Id.)

Plaintiff alleges that in 2006, available treatment for hepatitis C was a combination of interferon with ribavirin. (Id. at 7.) Plaintiff alleges that this treatment, "per guideline," was offered to patients whose tests indicated fibrosis stage F-2. (Id.) The treatment, while not as effective as the one that emerged a few years later, was effective to reduce viral loads. (Id.) The market price of this therapy was between $7,000 to $20,000. (Id.)

The medical treatment in each facility was the responsibility of the Chief Medical Executive ("CME"), tasked with delivery of medical care, oversight of operations and organizational culture. (Id. at 6.)

Plaintiff alleges that review of more complex, and maybe also expensive treatment was delegated to Utilization Management Program ("IUM"), a specialty group made up of staff that is

tasked with issues. (Id. at 7-8.) Plaintiff alleges that hepatitis C treatment was considered a specialty treatment. (Id.) Plaintiff alleges that the IUM reviews all referrals by primary care providers. (Id.) The primary care providers were the gatekeepers and advocates when it came to access to specialty care. (Id. at 8.)

Plaintiff alleges that the "CCHCS Care Guide Hep C," March 2012, contained a list of hepatitis C medications with various numbers of dollar signs next to them for doctors to consider. (Id.)

Plaintiff alleges that the fall of 2010, he transferred to the California Medical Facility ("CMF"). (Id. at 10.) Plaintiff alleges that on January 13, 2011, defendant Rading examined plaintiff. (Id.) Notes from this examination state that plaintiff had "1 fibrosis." (Id. at 11.) Defendant Rading told plaintiff that he could not refer plaintiff for treatment. (Id. at 12.) Defendant Rading advised plaintiff to contact the Hep C clinic to ask for treatment, despite the fact that CCHCS guidelines mandate that all treatment referrals need to be initiated by the primary care provider. (Id.) Defendant Rading allegedly told plaintiff that treatment is too expensive and plaintiff did not qualify for treatment. (Id.)

Plaintiff alleges that in 2012, defendant Dhillon told plaintiff that treatment was very expensive. (Id.)

Plaintiff alleges that in 2015, defendant Haile referred plaintiff for a liver biopsy. (Id.) To this day, plaintiff does not know the results of the biopsy. (Id. at 13.) Plaintiff alleges that, based on information and belief, his fibrosis score from the biopsy was at least F-2. (Id.)

Plaintiff alleges that in 2017, defendant Aguilera referred plaintiff for another set of diagnostic tests. (Id.) Plaintiff alleges that defendant Aguilera did not advise plaintiff of the test or biopsy results. (Id.) Plaintiff alleges that defendant Aguilera refused to treatment plaintiff for hepatitis C because the treatment was too expensive. (Id.)

Later in 2017, plaintiff transferred to Pelican Bay State Prison ("PBSP"). (Id. at 14.)

Plaintiff alleges that no defendant disclosed to plaintiff that he was co-infected with hepatitis B, and that such co-infection put plaintiff at much higher risk of cirrhosis and liver cancer than just HCV alone. (Id. at 16.) Plaintiff alleges that he asked defendant Dhillon to refer

4

him to a hepatitis specialist as CCHCS guidelines provide in cases of co-infection.  (Id. at 17.)

Plaintiff's fifth amended complaint includes the following allegations against defendant DiTomas:

> 10.  Defendants provided the names of the supervisory personnel who were allegedly directly involved in the decision making concerning Plaintiff's Hep C and Hep B treatment at the California Medical Facility, from 2010 to 2017 including:  Defendant Dr. Michele Ditomas, M.D., Chief Physician and Surgeon at California Medical Facility.

(Id. at 4.)

> Defendant Dr. Michele Ditomas, M.D., Chief Physician and Surgeon at California Medical Facility, was directly involved in the decision making concerning inmates with chronic Hep C infections, including plaintiff, and acted with deliberate indifference by denying and delaying treatment to plaintiff up to the point when the damage from hepatitis C and hepatitis C infections can no longer be reversed and thus violated plaintiff's constitutional rights that provide a prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

(Id. at 18.)

Legal Standards for Eighth Amendment and Supervisory Liability

*Eighth Amendment*

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard.

First, a prisoner must show a "serious medical need." Id. (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citation omitted), overruled on other grounds by WMX Technologies, 104 F.3d 1133 (9th Cir. 1997).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F.3d at 1096.  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety"; to satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a

5

substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

*Supervisory Liability*

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution"). "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation ... Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations and citations omitted).

Discussion

Defendants move to dismiss plaintiff's claims against defendant DiTomas on the grounds that the fifth amended complaint pleads no facts showing that defendant DiTomas acted with deliberate indifference. Defendants argue that the fifth amended complaint pleads no facts demonstrating that defendant DiTomas knew of plaintiff's case and test results. Defendants argue that the fifth amended complaint does not allege that defendant DiTomas took any action or failed to take any action regarding plaintiff's health care.

////

At the outset, the undersigned clarifies plaintiff's claims. Plaintiff appears to claim that defendants Rading and Dhillon violated the Eighth Amendment by denying his request for hepatitis C treatment, even though plaintiff's fibrosis score was less than F-2, because plaintiff was co-infected with hepatitis B. Plaintiff alleges that the CCHCS guidelines provide for referral to a specialist in cases of co-infection. (ECF No. 106 at 17.) Plaintiff also alleges that patients with co-infections of hepatitis C and hepatitis B have been categorized as higher priority for treatment. (Id. at 5.) Plaintiff also alleges that these defendants had full discretion when making medical referrals and were not restricted to act only on the basis of the guidelines. (Id. at 16.) Therefore, plaintiff appears to claim that defendants Rading and Dhillon disregarded the CCHCS guidelines and/or failed to properly exercise their discretion when denying plaintiff's request for treatment.

Plaintiff appears to claim that defendants Haile and Aguilera violated the Eighth Amendment by denying his request for hepatitis C treatment despite his fibrosis score of F-2 and co-infection with hepatitis B. Therefore, plaintiff appears to claim that defendants Haile and Aguilera disregarded the CCHCS guidelines when denying plaintiff's request for treatment.

Plaintiff alleges that defendant DiTomas, the Chief Physician and Surgeon at CMF, was directly involved in the decision-making concerning inmates with chronic hepatitis C infections. However, plaintiff pled no facts demonstrating that defendant DiTomas knew that defendants Rading, Dhillon, Haile and Aguilera denied plaintiff's request for hepatitis C treatment in disregard of the CCMCS guidelines or otherwise failed to properly exercise their discretion to refer plaintiff for treatment. For these reasons, the undersigned finds that plaintiff has not pled sufficient facts linking defendant DiTomas to the alleged deprivations.[1] See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

////

---

[1] In the fifth amended complaint, plaintiff does not appear to challenge the CCHCS policy authorizing treatment only for inmates with fibrosis levels F-2 or higher. Instead, plaintiff appears to allege that he qualified for treatment, even when his fibrosis level was less than F-2, based on his co-infection with hepatitis B.

In his opposition, plaintiff argues that defendant DiTomas knew that defendants denied him treatment even after he reached the F-2 level. (ECF No. 123 at 2.) Plaintiff also claims primary care providers refer inmates for treatment to the IUM. (Id.) Plaintiff appears to suggest that defendant DiTomas had knowledge of his failure to receive treatment because defendant DiTomas was a member of the IUM. (Id.)

The fifth amended complaint alleges that primary care providers are the gatekeepers when it comes to access to specialty care. The fifth amended complaint alleges that primary care providers refer patients to the IUM for hepatitis C treatment. The fifth amended complaint does not allege that a primary care provider at CMF found plaintiff eligible for treatment and referred plaintiff to the IUM. The fifth amended complaint also does not allege that defendant DiTomas denied plaintiff's request for treatment while a member of the IUM. For these reasons, the undersigned finds that plaintiff's conclusory claim that defendant DiTomas knew that plaintiff was denied treatment is unsupported. See Blantz v. CDCR, 727 F.3d 917, 926 (9th Cir. 2013) (supervisory liability may not be based solely on conclusory allegations made on "information and belief.").

In his opposition, plaintiff also alleges that defendant DiTomas participated in an unconstitutional policy which harmed plaintiff by "failing to treat or recommend treatment of plaintiff. See fifth amended complaint at 18, 12-22." (ECF No. 123 at 3.) Page 18 of the fifth amended complaint at 12-22 contains no allegations regarding defendant DiTomas's participation in a policy causing plaintiff harm. (ECF No. 106 at 18.) Accordingly, the undersigned finds that plaintiff's claim that defendant DiTomas participated in an unconstitutional policy is unsupported.

In the motion to dismiss, defendants argue that defendant DiTomas is entitled to qualified immunity. (ECF No. 122-1 at 9.) Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff,

1   demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2)
2   whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001),
3   receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need
4   not be considered in sequence).
5       As discussed above, the facts alleged, taken in the light most favorable to plaintiff, do not
6   demonstrate that defendant DiTomas violated plaintiff's constitutional rights.  Accordingly, the
7   undersigned need not further address the issue of qualified immunity.
8       Finally, defendants request that the claims against defendant DiTomas be dismissed with
9   prejudice because further amendment would be futile.  The undersigned agrees that further
10  amendment would be futile.  Plaintiff has had adequate opportunity to amend his claims and the
11  fifth amended complaint was prepared by counsel.  Accordingly, the claims against defendant
12  DiTomas should be dismissed with prejudice. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d
13  1048, 10052 (9th Cir. 2003).
14      Accordingly, IT IS HEREBY RECOMMENDED that:
15      1. Defendants' motion to dismiss (ECF No. 122) be granted; and
16      2. The claims against defendant DiTomas be dismissed with prejudice.
17      These findings and recommendations are submitted to the United States District Judge
18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
19  after being served with these findings and recommendations, any party may file written
20  objections with the court and serve a copy on all parties.  Such a document should be captioned
21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
22  objections shall be filed and served within fourteen days after service of the objections.  The
23  parties are advised that failure to file objections within the specified time may waive the right to
24  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
25  Dated: June 14, 2022

27  Pat451.57

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

9