UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. PATTON,<br><br>        Plaintiff,<br><br>    v.<br><br>F.N.P. LOADHOLT, et al.,<br><br>        Defendants. | No.  2: 19-cv-0451 KJN P<br><br><br><br>ORDER |

I.     Introduction

      Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  The parties consented to the jurisdiction of the undersigned.  (ECF No. 162.)

      Pending before the court is plaintiff's motion for partial summary judgment (ECF No. 154), defendants' motion for summary judgment on the merits of plaintiff's claims (ECF No. 159), defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies (ECF No. 160), plaintiff's motion to file a supplemental pleading in support of his motion for partial summary judgment (ECF No. 173), plaintiff's motion for an extension of time to file an amended opposition to defendants' motion for summary judgment on

////

////

1

the merits (ECF No. 178),[1] and plaintiff's motions for extensions of time to file sur-replies to defendants' replies to plaintiff's oppositions to defendants' summary judgment motions (ECF Nos. 180, 181).

For the reasons stated herein, defendants' summary judgment motion on the grounds that plaintiff failed to exhaust administrative remedies is granted. Because the undersigned finds that plaintiff failed to exhaust administrative remedies, the undersigned declines to address the motions for summary judgment addressing the merits of plaintiff's claims. Accordingly, the summary judgment motions addressing the merits of plaintiff's claims are vacated.

Plaintiff's motions to file a supplemental pleading, an amended opposition, and for an extension of time to file a sur-reply to defendants' reply to plaintiff's opposition to defendants' summary judgment motion on the merits are also vacated because these motions concern the summary judgment motions addressing the merits of plaintiff's claims.

Plaintiff's motions for an extension of time to file a sur-reply to defendants' reply to plaintiff's opposition to defendants' summary judgment motion on the grounds that plaintiff failed to exhaust administrative remedies is denied for the reasons stated herein.

II.     Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

---

[1] Although plaintiff's motion to file an amended opposition cites defendants' motion for summary judgment based on failure to exhaust administrative remedies, plaintiff's motion appears to seek an extension of time to file an amended opposition addressing defendants' summary judgment motion on the merits.

56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

1   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
2   trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce
3   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
4   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
5   amendments).

6       In resolving a summary judgment motion, the court examines the pleadings, depositions,
7   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.
8   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at
9   255.  All reasonable inferences that may be drawn from the facts placed before the court must be
10  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa
11  County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not
12  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from
13  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,
14  1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a
15  genuine issue, the opposing party "must do more than simply show that there is some
16  metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could
17  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
18  trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

19      On March 17, 2020 and May 12, 2023 (ECF Nos. 40, 159-1, 160-1), plaintiff was advised
20  of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of
21  Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v.
22  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

23      III.    Plaintiff's Claims

24      This action proceeds on plaintiff's fifth amended complaint against defendants Rading,
25  Haile, Aguilera and Dhillon.[2]  (ECF No. 106.)  Plaintiff alleges that he suffers from hepatitis C

---

[2] On May 23, 2022, the court dismissed the doe defendants named in the fifth amended complaint. (ECF No. 124.) On August 19, 2022, the court granted defendants' motion to dismiss the claims against defendant DiTomas raised in the fifth amended complaint with prejudice. (ECF No. 130.)

and hepatitis B. (Id. at 1.) Plaintiff alleges that it is well-established that hepatitis C and hepatitis B co-infection causes accelerated fibrosis and leads to higher incidence of liver cancer and manifests itself in rapid progression of liver scarring. (Id. at 5.) Plaintiff alleges that patients with co-infection of hepatitis C and hepatitis B have been categorized as higher priority for treatment. (Id.)

Plaintiff alleges that from 2006 to 2018, despite his health being monitored, his health went from mild liver scarring to severe liver damage otherwise referred to as cirrhosis. (Id. at 1-2.) Plaintiff alleges that he repeatedly requested treatment, but defendants denied his requests because it was too expensive. (Id. at 2.) Plaintiff alleges that he suffered irreversible damage to his liver as a result of defendants' failure to provide treatment. (Id.)

Plaintiff alleges that the medical care of inmates is managed by the Division of Health Care Services ("DHCS") together with California Correctional Health Care Services ("CCHCS"). (Id. at 6.) Plaintiff alleges that CCHCS guidelines expressly state that they are not intended to be a substitute for professional judgment of physicians when making treatment decisions. (Id.) Plaintiff alleges that the CCHCS Care Guide: Hepatitis C, March 2012, later updated on October 2, 2012, included the following caveat:

> Clinicians are encouraged to use the Care Guide to assist in the medical evaluation of HCV infected patients to determine the status of their liver disease and their eligibility for treatment.

(Id.)

Plaintiff alleges that a similar statement, with even more emphasis on independence of judgment is included in the CCHCS Care Guide: End Liver Disease: January 2012:

> The information contained in the guidelines is not a substitute for a health care professional's clinical judgment. Evaluation and treatment should be tailored to the individual patient and the clinical circumstances. Furthermore, using this information will not guarantee a specific outcome.

(Id.)

Plaintiff alleges that in 2006, available treatment for hepatitis C was a combination of interferon with ribavirin. (Id. at 7.) Plaintiff alleges that this treatment, "per guideline," was offered to patients whose tests indicated fibrosis stage F-2. (Id.) The treatment, while not as

5

effective as the one that emerged a few years later, was effective to reduce viral loads. (Id.) The market price of this therapy was between $7,000 to $20,000. (Id.)

The medical treatment in each facility was the responsibility of the Chief Medical Executive ("CME"), tasked with delivery of medical care, oversight of operations and organizational culture. (Id. at 6.)

Plaintiff alleges that review of more complex, and maybe also expensive treatment was delegated to Utilization Management Program ("IUM"), a specialty group made up of staff that is tasked with issues. (Id. at 7-8.) Plaintiff alleges that hepatitis C treatment was considered a specialty treatment. (Id.) Plaintiff alleges that the IUM reviews all referrals by primary care providers. (Id.) The primary care providers were the gatekeepers and advocates when it came to access to specialty care. (Id. at 8.)

Plaintiff alleges that the "CCHCS Care Guide Hep C," March 2012, contained a list of hepatitis C medications with various numbers of dollar signs next to them for doctors to consider. (Id.)

Plaintiff alleges that in the fall of 2010, he transferred to the California Medical Facility ("CMF"). (Id. at 10.) Plaintiff alleges that on January 13, 2011, defendant Rading examined plaintiff. (Id.) Notes from this examination state that plaintiff had "1 fibrosis." (Id. at 11.) Defendant Rading told plaintiff that he could not refer plaintiff for treatment. (Id. at 12.) Defendant Rading advised plaintiff to contact the Hep C clinic to ask for treatment, despite the fact that CCHCS guidelines mandate that all treatment referrals need to be initiated by the primary care provider. (Id.) Defendant Rading allegedly told plaintiff that treatment is too expensive and plaintiff did not qualify for treatment. (Id.)

Plaintiff alleges that in 2012, defendant Dhillon told plaintiff that treatment was very expensive. (Id.)

Plaintiff alleges that in 2015, defendant Haile referred plaintiff for a liver biopsy. (Id.) To this day, plaintiff does not know the results of the biopsy. (Id. at 13.) Plaintiff alleges that, based on information and belief, his fibrosis score from the biopsy was at least F-2. (Id.)

////

Plaintiff alleges that in 2017, defendant Aguilera referred plaintiff for another set of diagnostic tests. (Id.) Plaintiff alleges that defendant Aguilera did not advise plaintiff of the test or biopsy results. (Id.) Plaintiff alleges that defendant Aguilera refused to treatment plaintiff for hepatitis C because the treatment was too expensive. (Id.)

Later in 2017, plaintiff transferred to Pelican Bay State Prison ("PBSP"). (Id. at 14.)

Plaintiff alleges that no defendant disclosed to plaintiff that he was co-infected with hepatitis B, and that such co-infection put plaintiff at much higher risk of cirrhosis and liver cancer than just HCV alone. (Id. at 16.) Plaintiff alleges that he asked defendant Dhillon to refer him to a hepatitis specialist as CCHCS guidelines provide in cases of co-infection. (Id. at 17.)

As legal claims, plaintiff appears to allege that defendants acted with deliberate indifference by failing to refer him for treatment in 2011-2015, even though his fibrosis score was less than F-2, based on his co-infection with Hepatitis B. (Id. at 15-16.) Plaintiff appears to allege that defendants Haile, Aguilera and Dhillon (plaintiff does not allege that defendant Rading treated him after 2011) acted with deliberate indifference by failing to refer him for treatment in 2015-2017, when his fibrosis score was at least F-2. (Id.)

IV.     Discussion

   A.  Legal Standard for Administrative Exhaustion

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that

7

are defined not by the PLRA, but by the prison grievance process itself." Bock, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Bock, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id.; Griffin, 557 F.3d at 1120; see also Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.").

    B.  Undisputed Facts

Undisputed Fact No. 1: In 2006, while housed at California State Prison-Corcoran ("Corcoran"), plaintiff was diagnosed with hepatitis C. (ECF No. 160-3 at 1 (citing fifth amended complaint at §§ 28-29); ECF No. 171 at 10 (plaintiff's response).)

Undisputed Fact No. 2: Plaintiff transferred to CMF in the fall of 2010. (ECF No. 160-3 at 1 (citing fifth amended complaint at § 38); ECF No. 171 at 10 (plaintiff's response).)

Undisputed Fact No. 3: According to plaintiff's fifth amended complaint, defendant Rading was plaintiff's primary care physician in 2010-2011. (ECF No. 160-3 at 2, citing fifth

amended complaint at § 6); ECF No. 171 at 10 (plaintiff's response)[3].)

Undisputed Fact No. 4:  The fifth amended complaint does not allege that defendant Rading was involved in plaintiff's care after 2011.  (ECF No. 160-3 at 2, citing fifth amended complaint at § 6, 38, 42-47, 71, 74, 75); ECF No. 171 at 10 (plaintiff's response)[4].)

Undisputed Fact No. 5:  According to plaintiff's fifth amended complaint, defendants Dr. Aguilera, Dr. Dhillon and Dr Haile were all plaintiff's primary care provider from 2010-2017.  (ECF No. 160-3 at 2, citing fifth amended complaint at §§ 7-9); ECF No. 171 at 10 (plaintiff's response).)

Undisputed Fact No. 6:  Plaintiff alleges in the fifth amended complaint that defendants Aguilera, Dhillon, Rading and Haile were deliberately indifferent to a substantial risk to his health because they did not prescribe him medication for his hepatitis C during the 2010-2017 timeframe.  (ECF No. 160-3 at 2, citing fifth amended complaint at § 21, 81); ECF No. 171 at 12 (plaintiff's response).)

Undisputed Fact No. 7:  The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates with a healthcare grievance process for applied health care policies, decisions, actions, conditions or omissions that have a material adverse effect on an inmate's health or welfare.  (ECF No. 160-3 at 2, citing declaration of S. Gates, Chief of the Health Care Correspondence and Appeals Branch ("HCCAB") at § 6-8 (ECF No. 160-4 at 2-3) and California Code of Regulations title 15, § 3999.226(a) (2018); ECF No. 171 at 12 (plaintiff's response).)

Undisputed Fact No. 8:  The healthcare appeal process in place before September 1, 2017, had three levels of review.  (ECF No. 160-3 at 2, citing Gates declaration at § 6 (ECF No. 160-4

---

[3]  In his response to defendants' undisputed fact no. 3, plaintiff does not dispute that the fifth amended complaint alleges that defendant Rading was his primary care physician in 2010-2011.  (ECF No. 171 at 10.)  Plaintiff contends that in his statement of undisputed facts, he claims that defendant Rading was his primary care physician from 2010-2013.  (Id.)

[4]  In his response to defendants' undisputed fact no. 4, plaintiff does not dispute that the fifth amended complaint does not allege that defendant Rading was involved in his care after 2011.  (ECF No. 171 at 10.)  Plaintiff contends that in his statement of undisputed facts, he claims that defendant Rading was his primary care physician from 2010-2013.  (Id.)

at 2); ECF No. 171 at 12 (plaintiff's response).)

Undisputed Fact No. 9: The current healthcare grievance process has two levels of review. (ECF No. 160-3 at 2, citing Gates declaration at ¶ 7 (ECF No. 160-4 at 2-3); ECF No. 171 at 12 (plaintiff's response).)

Undisputed Fact No. 10: A final decision at the highest level exhausts the grievance or appeal. (ECF No. 160-3 at 2 citing Gates declaration at § 6-7 (ECF No. 160-4 at 2-3); ECF No. 171 at 12 (plaintiff's response).)

Undisputed Fact No. 11: Plaintiff filed his original complaint in this matter on March 5, 2019.[5] (ECF No. 160-3 at 2; see ECF No. 1 at 3; ECF No. 171 at 12 (plaintiff's response))

Undisputed Fact No. 12: Plaintiff's original complaint included plaintiff's assertions that defendants Aguilera, Dhillon, Haile and Rading were deliberately indifferent to plaintiff's medical needs. (ECF No. 160-3 at 2-3 citing plaintiff's original complaint, ECF No. 1, at §§ 6, 8-10); ECF No. 171 at 14 (plaintiff's response).)

Undisputed Fact No. 13: Plaintiff was aware of and used CDCR's healthcare grievance process. (ECF No. 160-3 at 3, citing Gates declaration at §§ 8-9, Exhs. A-3 (ECF No. 160-4).)

In response to defendants' undisputed fact no. 13, plaintiff states, "Plaintiff was not aware of how to file a grievance until 2018." (ECF No. 171 at 14.) Plaintiff's claim that he was not aware of how to file a grievance until 2018 is unsupported. Plaintiff does not allege why he was unaware of how to file a grievance until 2018 or otherwise address the circumstances that prevented him from learning how to file a grievance until 2018. Plaintiff's conclusory allegation that he did not know how to file a grievance until 2018, which is unsupported by factual data, is insufficient to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

////

---

[5] In undisputed fact no. 11, defendants contend that plaintiff filed this action on March 13, 2019, the date plaintiff's complaint was filed on the court docket. (ECF Nos. 1, 160-3 at 2.) Pursuant to the mailbox rule, plaintiff filed his complaint on March 5, 2019. (ECF No. 1 at 35.) In the proof of service for the complaint, plaintiff states that he served the complaint on "2/5/2019." (Id.) However, plaintiff signed the proof of service on March 5, 2019. (Id.) Therefore, the date "2/5/2019" appears to be a typographical error.

10

  Undisputed Fact No. 14:  Plaintiff's healthcare grievance log shows four filings, namely log numbers PBSP HC 17000020, PBSP HC 17000029, PBSP HC 18000397, and PBSP 19000143.  (ECF No. 160-3 at 3, citing Gates declaration at § 9 and Exhs. A-D (ECF No. 160-4); ECF No. 171 at 14 (plaintiff's response).)

  Undisputed Fact No. 15:  Grievance log number PBSP HC 17000020 was opened in error, there is no grievance or other documents associated with that log number.  (ECF No. 160-3 at 3, citing Gates declaration at § 14 (ECF No. 160-4); ECF No. 171 at 14 (plaintiff's response).)

  Undisputed Fact No. 16:  Grievance log number PBSP HC 17000029 related to a dispute over healthcare copayments.  (ECF No. 160-3 at 3, citing Gates declaration at § 9 and Exh. D at 5 (ECF No. 160-4); ECF No. 171 at 14 (plaintiff's response).)

  Undisputed Fact No. 17:  Grievance log number PBSP HC 19000143 was signed by plaintiff on April 22, 2019, and received by prison officials on April 24, 2019.  (ECF No. 160-3 at 3, citing Gates declaration at § 9 and Exh. B at 8 (ECF No. 160-4); ECF No. 171 at 14 (plaintiff's response).)

  Undisputed Fact No. 18:  Grievance log number PBSP HC 18000397 was received by prison officials on June 6, 2018.  (ECF No. 160-3 at 3, citing Gates declaration at § 9 and Exh. C at 3 (ECF No. 160-4).

  In undisputed fact no. 18, defendants state that grievance log number PBSP HC 18000397 was "filed" on June 6, 2018.  (ECF No. 160-3 at 3.)  The grievance indicates that it was "received" on June 6, 2018.  (ECF No. 160-4 at 33.)  In response to undisputed fact no. 18, plaintiff claims he filed this grievance on May 5, 2018.  (ECF No. 171 at 14.)  Plaintiff signed this grievance on May 5, 2018.  (ECF No. 160-4 at 33.)

  Undisputed Fact No. 19:  Plaintiff transferred to Pelican Bay State Prison ("PBSP") in August 2017.  (ECF No. 160-3 at 3, citing fifth amended complaint at § 56; ECF No. 171 at 14 (plaintiff's response).)

  Undisputed Facts Nos. 20-31:  Defendants' undisputed facts nos. 20-31 address the substance of grievance log number PBSP HC 18000397.  (ECF No. 160-3 at 3-5.)  The undersigned herein discusses grievance no. PBSP HC 18000397.

11

C. Discussion

Defendants argue that plaintiff's four healthcare grievances failed to exhaust plaintiff's administrative remedies. Defendants contend that grievance no. PBSP HC 17000020 did not exhaust plaintiff's claims because it is undisputed that this grievance was opened in error. Defendants contend that grievance no. PBSP HC 17000029 did not exhaust plaintiff's claims because it is undisputed that this grievance related to a dispute over healthcare copayments. Defendants contend that grievance no. PBSP HC 19000143 did not exhaust plaintiff's claims because prison officials received this grievance on April 24, 2019, which was *after* plaintiff filed this action on March 5, 2019. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) ("[A] prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation.").

Plaintiff does not dispute that grievance nos. PBSP HC 17000020, PBSP HC 17000029 and PBSP HC 19000143 did not exhaust his administrative remedies. Plaintiff disputes defendants' claim that grievance no. PBSP HC 18000397 did not exhaust his administrative remedies. The undersigned addresses these arguments herein.

Plaintiff submitted grievance no. PBSP 18000397 in June 2018, after his transfer to PBSP in August 2017. In this grievance, plaintiff wrote,

> My results of my kidneys essentially tested normal on 10/4/17, on 3/16/18 I signed up for 'hep C' treatment consent agreement. Back on 10/3/17, 11/6/17 up to 4/17/18 immunizations shots of hep 'A' and hep 'B' vaccine, pneumococcal 28 polyvolent. On 3/18/18 labs show hep 'B' virus that [illegible] treatment. On 3/30/18 I have to statements of the same date, and of one of the forms stated that is of 3/30/18 states on 3/22/18 that my kidneys are a bit worse of my last test, my second statement of 3/30/18 I would see a specialist— nephrologist for my kidneys have gotten worse in the last 6 months. On 5/21/18 states I have a chronic kidney disease states I'm normal? How could it be with two different statements of 3/30/18.
>
> Chronic hep 'c' can cause; a shorter life span: I've been diagnose with hep 'c' in 2006, hep 'c' patients died at a median age of 57 I'm 59 bless at this point, its known that 20 years shorter than the average US lifespan. Chronic hep 'c' is serious and long lasting for 75-85% of people, liver disease projects of 45% of untreated would develop cirrhosis. I believe from 12 years of hep 'C' untreated is the cause of my kidneys disease, FDA approved in 2013 two new life saving drugs known as simeprevir (band name Olysio) and sofosbuvir (brand name Solvaldi). The drugs, a new class of meds called direct-

> action antivirals (DAA) were proven to be over 90% effective in [illegible]. If and when my kidneys disease is cured, my hep 'C' wouldn't be, because many state departments of corrections have and are resisting DAA treatment to prisoners with HCV, such drugs are a standard of medical care for I'm not sick enough or on my death bed with liver failure that now cause of my kidneys disease. No treatment was offered to me. I've been persisted on receiving treatment that I was told too expensive in the past.

(ECF No. 160-4 at 33, 35.)

The Institutional Level Response to grievance no. PBSP HC 18000397 found that the grievance raised two issues: 1) plaintiff wanted to receive HCV treatment; and 2) "You have 'statements' concerning your chronic kidney disease with conflicting information." (Id. at 37.) The Institutional Level response states that on June 27, 2018, plaintiff was examined by the primary care provider and treatment using the medication Epclusa was initiated. (Id.) Epclusa is a 12-week course of medication. (Id.) The Institutional Level response also states that plaintiff was enrolled in the Chronic Care Program for HCV and Chronic Kidney Disease. (Id. at 38.) The Institutional Level response notes plaintiff's examinations on April 25, 2018, May 8, 2018, June 6, 2018, and plaintiff's renal ultrasound on May 21, 2018. (Id.) The response found that no intervention was needed. (Id. at 37.)

The response also states,

> Though you may not have received the treatment(s) of your choice, there is no indication you were not provided clinically necessary health care service due to budgetary or financial constraints as you alleged. A review of your records shows your care has been provided pursuant to the rules and regulations governing management and delivery of medically necessary health care services. Patients shall be accorded impartial (equal, unbiased) access to treatment or accommodations that are determined to be medically indicated, based on the patient's individual presentation, history, and exam findings in accordance with appropriate policies and procedures.

(Id.)

In his appeal of grievance no. PBSP HC 18000397 to the Headquarters' Level, plaintiff wrote,

> I want to know why it took 12 years for me to start my treatment and why CDCR keep giving me false results about my kidneys.

13

> When I found out about my issue, why didn't treatment start than, and CDCR waited until my conditions got worser. I've been mentally distressed about my condition and suffering and worried if I'm going to live or not. Health care seem as if I don't have an issue. I also wrote an request for an ocean review of my medical files dated back from 2006 through 2018, for my blood work from 1997 through 2006.

(Id. at 34.)

The Headquarters' Level Response to grievance no. PBSP HC 18000397 identified the issues raised in the grievance as the same two issues identified in the Institutional Response. (Id. at 31.) The Headquarters' Level Response summarized plaintiff's recent, relevant treatment, beginning on March 30, 2018, when plaintiff received a letter regarding his lab results. (Id. at 31-32.) The Headquarters' Level Response found that no intervention was necessary. (Id. at 31.)

As stated above, the amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedure. Sapp v. Kimbrell, 623 F.3d at 824 (citing Bock, 549 U.S. at 218). At the time plaintiff submitted grievance no. PBSP HC 18000397, the following regulation described the level of specificity required in a health-care appeal:

> The grievant shall document clearly and coherently all information known and available to him or her regarding the issue. (1) The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. (2) If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance.

California Code of Regulations title 15, § 3087.2(g) (renumbered eff. Jan. 1, 2019).

For the following reasons, the undersigned finds that grievance no. PBSP HC 18000397 did not exhaust the claims raised in the fifth amended complaint.

Defendants are correct that grievance no. PBSP HC 18000397 failed to mention any defendants, any CMF staff, or discuss hepatitis C treatment plaintiff claims he should have received at CMF. The only specific dates of treatment identified by plaintiff in grievance no. PBSP HC 18000397 occurred at PBSP. For these reasons, the undersigned finds that grievance

14

1 no. PBSP HC 18000397 did not "clearly and coherently" raise a claim challenging plaintiff's
2 alleged failure to receive hepatitis C treatment from defendants at CMF.  Therefore, grievance no.
3 PBSP 18000397 did not exhaust plaintiff's administrative remedies.

4     In his opposition, plaintiff argues that the regulations did not require plaintiff to name
5 defendants if he did not remember their names.  Section 3087.2(g) provides that if the grievant
6 does not have the information to identify involved staff, the grievant shall provide any other
7 available information that may assist in processing the health care grievance.  Assuming plaintiff
8 did not remember the names of defendants at the time he prepared grievance no. PBSP HC
9 18000397, plaintiff failed to provide any information that would have assisted the reviewers in
10 identifying defendants.  Most importantly, plaintiff failed to clearly state that he was challenging
11 his alleged failure to receive hepatitis C treatment at CMF.

12     The undersigned also finds that the statement in the Institutional Level response that
13 "there is no indication you were not provided clinically necessary health care service due to
14 budgetary or financial constraints as you alleged," does not indicate that the Institutional Level
15 reviewer construed plaintiff's grievance to raise a claim challenging his alleged failure to receive
16 hepatitis C treatment at CMF.  The fact that the treatment and examinations, listed in the
17 grievance and in the Institutional Level response, occurred at PBSP demonstrate that the
18 institutional reviewer did not consider plaintiff's hepatitis C treatment at CMF.  The fact that the
19 Institutional Level response did not mention CMF anywhere also demonstrates that the
20 institutional reviewer did not consider plaintiff's hepatitis C treatment at CMF.

21     The undersigned observes that in his first level grievance, plaintiff wrote that he believed
22 that "12 years of hep 'C' untreated is the cause of my kidneys disease…"  The undersigned finds
23 that this statement did not put the Institutional Level reviewer on notice that plaintiff challenged
24 his alleged failure to receive treatment for hepatitis C at CMF.  It is undisputed that 12 years prior
25 to plaintiff submitting grievance no. PBSP HC 18000397 in June 2018, plaintiff was housed at
26 California State Prison-Corcoran.  It is undisputed that plaintiff transferred to CMF in 2010.
27 Plaintiff's claim in his grievance that his hepatitis C went untreated for 12 years did not put the
28 Institutional Level reviewer on notice that plaintiff challenged his alleged failure to receive

hepatitis C treatment at all of the prisons in which he was housed from 2006 until his transfer to PBSP, including CMF.

In his appeal to the Headquarters' Level of Review, plaintiff wrote that he wanted to know why it took 12 years for him to start hepatitis C treatment and why CDCR kept giving him false results about his kidneys. To the extent this statement could be construed as challenging plaintiff's hepatitis C treatment at CMF, plaintiff's raising of this new claim in the Headquarters' Level appeal did not exhaust administrative remedies as to this claim. Cal. Code Regs., tit. 15 § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted inmate grievance) (repealed eff. June 1, 2020).).

The undersigned also observes that the Headquarters' Level Response indicates that the reviewers of that grievance did not address a claim by plaintiff regarding his alleged failure to receive hepatitis C treatment prior to his transfer to PBSP. As discussed above, the Headquarters' Level Response addressed only plaintiff's hepatitis C treatment at PBSP.

For the reasons discussed above, the undersigned finds that grievance no. PBSP HC 18000397 failed to exhaust plaintiff's administrative remedies because it did not give adequate notice that plaintiff challenged defendants alleged failure to provide him with hepatitis C treatment while plaintiff was housed at CMF. See Madsen v. Toor, 2021 WL 1839612, at *5 (E.D. Cal. May 7, 2021), findings and recommendations adopted 2021WL 2212247 (E.D. June 1, 2021) ("Upon review of VSP HC 18001076, the Court finds the allegations too generalized to give Dr. Toor notice that this grievance was directed at him, notwithstanding his later assignment as plaintiff's PCP....However, without any allegations of Defendant's personal participation and only a general reference to 'medical staff,' it is too vague to support claims against Defendant.").

Defendants also argue that plaintiff's claim in grievance no. PBSP 18000397 that he wanted certain medications that became available in 2013 did not exhaust plaintiff's claims regarding his treatment prior to 2013.[6] While defendants may be correct, the inverse of this

---

[6] In the summary judgment motion, defendants alleged that in the grievance, plaintiff claimed that the drugs became available in 2015. In the opposition, plaintiff contends that the grievance

argument is that plaintiff's mention of the two drugs that became available in 2013 exhausted his claims challenging his alleged failure to receive hepatitis C treatment at CMF after 2013. As discussed above, plaintiff's grievance failed to identify defendants or otherwise put the grievance reviewers on clear notice that plaintiff challenged his alleged failure to receive hepatitis C treatment from defendants at CMF. Plaintiff's grievance did not link any defendant to the drugs that allegedly became available in 2013. For these reasons, the undersigned finds that plaintiff's mention of two drugs that allegedly became available in 2013 did not put the grievance reviewers on notice that plaintiff challenged his failure to receive these medications while housed at CMF after 2013.

Defendants also argue that the fifth amended complaint alleges that defendant Rading was involved in plaintiff's treatment in 2010-2011 only. Defendants argue that summary judgment for failure to exhaust claims before 2013 would dismiss all claims against defendant Rading. In the opposition, plaintiff claims that defendant Rading was his primary care provider from 2011 to 2013. (ECF No. 171 at 10.) The undersigned finds that plaintiff failed to exhaust his claims against defendant Rading because grievance no. PBSP HC 18000397 did not name defendant Rading or otherwise clearly claim that plaintiff challenged defendant Rading's alleged failure to provide plaintiff with hepatitis C treatment.

In the summary judgment motion, defendants also argue that grievance no. PBSP HC 18000397 did not exhaust plaintiff's claims because the grievance did not meet the timeliness requirement. Defendants argue that plaintiff did not file this grievance within thirty days of the action being grieved, as required by Cal. Code of Regulations Title 15, § 3999.227(b). The undersigned need not reach this argument because plaintiff did not raise the claims raised in the fifth amended complaint in grievance no. PBSP HC 18000397.

Finally, defendants also argue that plaintiff may argue that grievance no. PBSP HC 18000397 meets the exception for administrative exhaustion discussed in Reyes v. Smith, 810 F.3d 654 (9th Cir. 2016). In Reyes, the Ninth Circuit found an exception to the exhaustion

---

alleges that the drugs became available in 2013. In the reply, defendants appear to concede that they misread the grievance regarding the year the drugs became available.

requirement where the grievance did not name two defendants because it did identify the "Pain Management Committee," of which those defendants were members. Id. at 658-59. Referring to the committee allowed prison officials to infer the identities of the assertedly responsible officials who were its members. Id. at 659.

The undersigned agrees with defendants that the Reyes exception is not applicable. Unlike the grievance in Reyes, grievance no. PBSP HC 18000397 provided no information from which the reviewers could reasonably infer that plaintiff raised a claim regarding the alleged denial of hepatitis C treatment by defendants at CMF.

Plaintiff requests an extension of time to file a sur-reply to defendants' reply to plaintiff's opposition to defendants' summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF Nos. 180, 181.)

Parties do not have the right to file sur-replies and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The court generally views motions for leave to file a sur-reply with disfavor. Miller v. Soto, 2022 WL 3718308, at *1 (E.D. Cal. Aug. 29, 2022) (citing Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. Id. (citing JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

In this Circuit, courts are required to afford pro se litigants additional leniency. Id. (citing Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "This leniency, however, does not extend to permitting sur-replies as a matter of course and the Court is not generally inclined to permit sur-replies absent an articulation of good cause why such leave should be granted." Id.

In the pending motions for extensions of time, plaintiff does not address the grounds of his request for leave to file a sur-reply. In other words, plaintiff does not explain why he wants to file

a sur-reply. Accordingly, plaintiff's motions for extensions of time to file a sur-reply are denied because plaintiff fails to show good cause why leave to file a sur-reply should be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for partial summary judgment (ECF No. 154), defendants' motion for summary judgment on the merits of plaintiff's claims (ECF No. 159), plaintiffs motion to file a supplemental pleading (ECF No. 173), plaintiff's motion for an extension of time to file an amended opposition (ECF No. 178), and plaintiff's motions for extensions of time to file a sur-reply to defendants' reply to plaintiff's opposition to defendants' summary judgment motion addressing the merits of plaintiff's claims (ECF Nos. 180, 181) are vacated;

2. Plaintiff's motions for extensions of time to file a sur-reply to defendants' reply to plaintiff's opposition to defendants' summary judgment on the grounds that plaintiff failed to exhaust administrative remedies (ECF Nos. 180, 181) are denied;

3. Defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies (ECF No. 160) is granted; and

4. The Clerk of the Court shall enter judgment for defendants.

Dated: September 28, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Pat451.sj